**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

**MOHAMED EL MOCTAR BEITTAR,**

**Petitioner,**

**v.**

**WARDEN OF CAMPBELL COUNTY DETENTION CENTER, *et al.*,**

**Respondents.**

**CASE NO. 2:26-CV-265-KKC**

**OPINION AND ORDER**

This matter is before the Court on the Petitioner Mohamed El Moctar Beittar's Writ of Habeas Corpus (R. 1). For the following reasons, the Court will grant the Petition.

## I. FACTUAL BACKGROUND

Petitioner is a native and citizen of Mauritania who entered the United States at a port of entry in Brownsville, Texas on or about October 7, 2024. Petitioner was served with a Notice to Appear (NTA) (R. 7-1) and was paroled into the United States. On June 1, 2026, Petitioner was taken into Immigrations and Customs Enforcement (ICE) custody pursuant to an I-200 Warrant for Arrest of Alien (R. 7-5), and he is currently detained by ICE at the Campbell County Detention Center in Newport, Kentucky. An immigration judge has not reviewed his detainment. (R. 1).

## II. ANALYSIS

Beittar's Petition alleges that he is being detained under incorrect statutory authority and that he should be provided with an individualized custody determination hearing. While maintaining that argument, Beittar also argues that his present detention without a bond hearing deprives him of his right to due process under the Fifth Amendment. He requests an immediate bond hearing. Respondents argue that Petitioner's detainment under 8 U.S.C. § 1225(b)(2) is

proper. Petitioner argues that he is not subject to detention under § 1225(b)(2) and instead his "detention is governed by 8 U.S.C. § 1226." (R. 1). A district court may grant a writ of habeas corpus to any person who shows their detainment is in violation of the Constitution or the law or treaties of the United States. 28 U.S.C. § 2241(c).

*A. Statutory Framework*

The Immigration and Nationality Act has two established statutes, codified in Title 8, that govern the dentition of noncitizens pending removal proceedings. *See* 8 U.S.C. § 1225, 1226. Section 1225, the provision Respondents argue governs, states in part:

> (b) Inspection of applicants for admission
>
> (2) Inspection of other aliens
>
> (A) In general
>
> Subject to paragraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

"An alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Section 1226, the provision Petitioner argues governs his detention, states:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) May continue to detain the arrested alien; and

(2) May release the alien on—

(A) Bond of at least $1,500 with security approved by, and contained conditions prescribed by, the Attorney General. . . .

"The plain meaning of [§ 1225(b)(2)(A)] is that detention must continue . . . until removal proceedings have concluded." *Lopez-Campos*, 175 4th, at 721 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018)). Section 1226, however, applies to noncitizens who are detained while a decision on removal is pending. *Id.* "The Attorney General may release a noncitizen detained under § 1226 on bond or conditional parole, with the exception of noncitizens who 'fall [] into one of several enumerated categories involving criminal offenses and terrorist activities.'" *Id.* (quoting *Jennings*, 583 U.S. at 289). Simply, § 1225(b)(2) applies to noncitizens who seek admission into the country and § 1226 applies to "all other noncitizens pending a decision on their removability, with exceptions." *Id.* at 722. Whether a petitioner has a right to a custody determination hearing is dependent on which provision justifies their detention.

A noncitizen is "seeking admission," and can be detained under § 1225(b), if the individual is "actively in search of lawful entry into the United States via inspection and authorization by an immigration officer." *Id.* As explained in *Lopez-Campos*, § 1225 applies to applicants after the original "examining immigration officer" determines the noncitizen seeking admission "is not clearly and beyond a doubt entitled to be admitted." *Id.* at 729. For noncitizens within the interior of the United States, "claims for relief are typically presented before and resolved by an immigration judge, who is expressly not an immigration officer" and § 1226 would apply in that scenario. *Id.*

Beittar was paroled and had been in the United States for almost two years when he was detained by ICE. As outlined in *Lopez-Campos*, he was within the interior and his claims would typically have been presented to an immigration judge, not an immigration officer. *See* 175 F.4th, at 729. Simply, the 6th Circuit has stated that "seeking admission" and "applying for admission" have independent meanings, and a noncitizen's application for admission does not automatically justify detainment under § 1225(b). Beittar was already present in the United States when he was detained and could only have been detained pursuant to § 1226. Accordingly, the Court concludes § 1226 governs Beittar's detention.

*B. Fifth Amendment Due Process Clause Claims*

Now that the Court has concluded § 1226(a) is the appropriate statutory framework to apply to Beittar, the Court must determine whether his present detention violates his due process rights. The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Noncitizens in the United States, even those here illegally, are entitled to due process of law. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Lopez-Campos*, 175 F.4th, at 738 (stating noncitizens who have "passed through our gates" are protected by the Fifth Amendment); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Courts conducting a due process analysis apply a three-part balancing test that weighs:

(1) the private interest that will be affected by the official action;

(2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional of substitute procedural safeguards; and

(3) the United States' interest, including the function involved and the discal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathew v. Eldridge*, 424 U.S. 319, 321 (1976).

There is no dispute about whether Beittar has a cognizable liberty interest in avoiding detention. *Lopez-Campos*, 175 F.4th, at 764 (stating the liberty interest is "the most fundamental interest protected by the Due Process Clause and is shared by citizens and noncitizens alike."); *Hamidi v. Rumsfeld*, 542 U.S. 507, 531 (2004) (confirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law"). Additionally, previous Supreme Court rulings have required individualized hearings for deprivations less fundamental than a liberty interest. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

The risk of erroneous deprivation of Beittar's interest is high if he does not receive a hearing. *See Ismoilov v. Maydak*, No. 26-cv-185-DLB, 2026 WL 1587994, at *4 (E.D. Ky. June 3, 2026) (holding the petitioner's detention "creates a high risk of erroneous deprivation of his liberty interest); *Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 346682, at *14 (W.D. Ky. Nov. 27, 2025). Beittar has not received a hearing to determine his eligibility for bond. His detention creates a risk of erroneous deprivation of his liberty interest.

As already outlined by decisions in the Eastern District, "existing statutory and regulatory safeguards" similar to the ones discussed above "serve the government interest in public safety." *Ismoilov*, 2026 WL 1587994, at *5 (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)). Accordingly, all three *Mathews* factors weigh in favor of Beittar.

Petitioner's Fifth Amendment due process rights were violated when he was detained without access to an individualized hearing. The proper remedy to this violation is a constitutionally adequate bond hearing. At that hearing, the government bears the burden of proof by clear and convincing evidence. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2nd Cir. 2020).

## III. CONCLUSION

Accordingly, for the reasons previously stated, it is ORDERED that:

(1) Beittar's Petition for Writ of Habeas Corpus (R. 1) is GRANTED;

(2) Respondents SHALL, within seven (7) days of the entry date of the Order, release the Petitioner, or in the alternative, provide him with a constitutionally adequate bond hearing where the government bears the burden of proof by clear and convincing evidence under 8 U.S.C. § 1226(a); and

(3) Respondents SHALL FILE a Status Report with this Court on or before October 9, 2026, to certify compliance with this order. The Status Report shall include when the bond hearing occurred, whether bond was granted or denied, and if denied, the reasons for that denial.

This 24th day of September, 2026.

**Signed By:**
***Karen K. Caldwell***
**United States District Judge**